UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
UNITED STATES OF AMERICA
                                                        :
         - v. -
                                                        :   17 Cr. 004 (LTS)
PEDRO JARAMILLO,
                                                        :
                        Defendant.
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S SENTENCING MEMORANDUM**


                                    JOON H. KIM
                                    Acting United States Attorney for the
                                    Southern District of New York
                                    One St. Andrew's Plaza
                                    New York, New York 10007

Andrea M. Griswold
Assistant United States Attorney

         - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in connection with the sentencing of defendant Pedro Jaramillo ("Jaramillo"), which is scheduled for July 27, 2017. For the reasons that follow, the Government respectfully submits that a sentence within the advisory range of 78 to 97 months' imprisonment, calculated pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), is appropriate.

Over the course of at least two years, Jaramillo defrauded more than two dozen investors – including elderly retirees and working professionals – of more than a million dollars, betraying their trust and leaving many of them facing financial ruin. Jaramillo never engaged in the legitimate commodities investments he described to his clients. Instead, he simply stole his victims' money and used it to support his lifestyle, or wired it out of the country. He lied to investors, telling them their investments were doing well. He encouraged them to invest more. He used new investor money to pay redemptions to investors whose requests could no longer be forestalled. Given the brazen and deliberate nature of Jaramillo's conduct, the incredible and negative impact of his crime on his victims and the goals of sentencing – particularly just punishment, promotion of respect for the law, and adequate deterrence – a term of imprisonment within the advisory Guidelines range is warranted.

## BACKGROUND

**A. The Offense Conduct**

The offense conduct is accurately set forth in the Presentence Report at paragraphs 17 through 64. From at least January 2014 until his arrest in December 2016, Jaramillo raised more than $1.2 million from more than two dozen investors, primarily for the purported purpose of investing in commodity futures contracts. To obtain investor funds, Jaramillo pitched

prospective investors from his office on Wall Street and through a flashy online video in which he highlighted how insurance protection ensured victims would not lose money.  Jaramillo targeted vulnerable victims – retirees, widows, individuals for whom English was a second language – and promised to help grow their savings.   To lure his victims, Jaramillo represented that he was an accomplished Wall Street commodities trader earning returns of twenty-five percent every ninety days through his relationship with a Global Investment Bank.  Without Jaramillo, the defendant represented, such an opportunity would never have been made available to his victims.

But instead of investing victims' money as promised – or even investing it at all – Jaramillo converted more than $700,000 of the $1.2 million to his own use in the form of cash withdrawals and debit card purchases used to fund his lifestyle, including thousands of dollars on vacations to Disney World.   In addition, Jaramillo diverted more than $100,000 of new investor funds out of bank accounts he controlled in the United States to foreign bank accounts, including in Peru where Jaramillo is a citizen.    Jaramillo used the remainder of investor funds to pay back other investors in a Ponzi-like fashion, distributing more than $200,000 back to investors from funds deposited by new investors.

### B.  The Charges, the Guilty Plea, and the Guidelines Calculation

In December 2016, in the midst of his scheme, Jaramillo was arrested and charged in a criminal Complaint with commodities fraud (Count One), wire fraud (Count Two) and money laundering (Count Three).    Jaramillo was indicted on the same charges in January 2016.

On April 6, 2017, Jaramillo pleaded guilty before your Honor to Counts One and Two of the Indictment.   Jaramillo entered his plea pursuant to a plea agreement in which the parties stipulated to an advisory Guidelines range of 78 to 97 months' imprisonment, with a base offense

level of 7, a 14-level enhancement based on an estimated loss of between $550,000 and $1.5 million, pursuant to U.S.S.G. §2B1.1(b)(1)(H); a four-level enhancement because the offense resulted in substantial financial hardship to five or more victims, pursuant to U.S.S.G. §2B1.1(b)(2)(B); a two-level enhancement because the offense involved sophisticated means, pursuant to U.S.S.G. §2B1.1(b)(10)(C); and a four-level enhancement because the offense involved commodities fraud and the defendant was acting as a commodities trading advisor, pursuant to 2B1.1(b)(19)(B).[1]  This calculation resulted in a total offense level of 31.  With a criminal history Category of I and the three point reduction for acceptance of responsibility and the defendant's timely notice of his intention to plea, the adjusted offense level is 28.

## DISCUSSION

### A. Applicable Law

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."  *United States* v. *Booker*, 543 U.S. 220, 252 (2005).  Thus, the applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose.  *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).  In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims."  *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be

---

[1] This calculation is consistent with the PSR, in which Probation recommends a sentence of 78 months.

considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).

### B. A Guidelines Sentence Is Warranted In This Case

A sentence within the advisory Guidelines range would be fair and appropriate in this case, given the nature and circumstances of Jaramillo's offense, the need for both general and specific deterrence, and the need to impose just punishment and promote respect for the law.

1. <u>The Guidelines Provide a Useful Framework in this Case</u>

Economic loss serves as a suitable starting place for assessing culpability because it serves as a useful – though certainly not dispositive – proxy for viewing the magnitude of the crime. This is especially so in this case where the defendant personally extracted every penny of loss. Given this – as well as the fact that Jaramillo did no actual investing – there can be no

5

question that Jaramillo intended to permanently deprive his victims of these funds. As a result, the criticisms sometimes leveled at the loss Guidelines in the context of other types of fraud cases – namely that they purportedly overstate the true loss by including theoretical losses, or losses beyond the defendant's control – do not apply in this case.

In addition, the enhancements applied to the guidelines in this case, including the four level enhancement because of the serious financial hardship suffered by certain of Jaramillo's victims, appropriately reflect Jaramillo's deliberate conduct.

2. The 3553(a) Factors Favor a Guidelines Sentence

The Complaint and PSR at paragraphs 29 through 54 recount in detail the facts and circumstances of four of the Victim investors this case. These examples illustrate the serious and brazen nature of the offense and its devastating impact on the victims. As the Court can see, Jaramillo's victims were not wealthy. His victims included retirees, working professionals, and manual laborers. Each worked hard for the money they invested with Jaramillo – money often saved over a period of decades. Jaramillo worked hard at convincing his victims to turn over this money, falsely portraying himself as an accomplished Wall Street trader who could be trusted.

To date, the Court has been provided with victim impact statements from several of Jaramillo's victims, many of which are detailed in the final PSR. In addition, the Court and the parties have recently received additional letters reflecting the wide ranging impact of Jaramillo's conduct. For example, Victim-5, a career mason, explained the impact of being unable to retire or pay his children's tuition as a result of Jaramillo: "Jaramillo gained our trust and introduced himself as a successful stock broker . . . [who] made us believe that he was investing in

commodities and the stock market. We are broken and also our dream for retirement is vanished due to his crime."

Other victims describe Jaramillo as a talented liar and manipulator who they fear will reoffend if given the opportunity. For example, Victim-6 notes that Jaramillo "has the ability and intelligence to lie and cheat," and describes the impact of this deceit on Victim-6's family:

> Jaramillo robbed me of all the money from my savings that I put together with a lot of sacrifice . . . I am now completely ruined and have no money to support my mother who is ill and in very delicate health.

Similarly, Victim-6 describes how Jaramillo "signed false checks with no shame whatsoever" and opines that if Jaramillo is set free "he will do the same thing to other honorable people."

The brazen nature of Jaramillo's offense and its impact on his victims is manifest in the victim impact letters. Jaramillo lived off his victims' money for at least two years. Victim's money paid for a lifestyle – exemplified by vacations to Disneyworld during the scheme – that he would not otherwise have been able to afford and, because of Jaramillo's fraud, neither can his victims. As described above, Jaramillo systematically targeted individuals who he knew did not have knowledge in trading but had savings to invest, with the promise of a safe and lucrative opportunity. For two years, Jaramillo continued to take in money knowing that he had never invested a single penny of investors' money. Jaramillo's repeated lies – in his flashy promotional video, in face-to-face meetings in his Wall Street Office, and in false emails and texts purporting to assure nervous investors – enabled him to steal outright his victims' hard-earned savings. This sustained and methodical criminal conduct points to the need for a sentence within the Guidelines range. Such a sentence will also provide just punishment for Jaramillo's manipulative and purposeful actions and promote respect for the law.

7

In addition, with regard to the need to avoid unwarranted sentencing disparities, *United States* v. *William Wells*, 15 Cr. 885 (KMW) is instructive.  Over a period of six years, *Wells* ran a Ponzi-scheme (approximately $3 million) that defrauded dozens of investors.  Like Jaramillo, the defendant in *Wells* targeted working professionals and retirees, including those without prior trading experience.  Several victims in *Wells* submitted detailed victim impact statements to the Court or spoke at sentencing.  In imposing a sentence in the middle of the applicable guidelines range, the Honorable Kimba M. Wood characterized Wells' offense as "very, very serious" and noted the sustained nature of his criminal conduct.[2]  The reasoning in *Wells* applies with great force here.  In addition, unlike Jaramillo, Wells engaged in some legitimate, albeit unsuccessful trading, allowing him to argue that he did not set out to defraud people.  Jaramillo cannot make this claim.

In sum, given the facts set forth above and in the PSR, the totality of the 3553(a) factors point to the need for a Guidelines sentence in this case.

---

[2] Sentencing Transcript, Docket Entry 37 at 21.  Wells was sentenced to 46 months' imprisonment, which was the middle of the guidelines range in that case.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that Jaramillo has committed a serious offense, the appropriate punishment for which is adequately reflected in the applicable Guidelines range. Accordingly, the Government requests that the Court impose a sentence within the applicable Guidelines range of 78 to 97 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    Respectfully submitted,

    JOON H. KIM
    Acting United States Attorney

By:   /s/ Andrea M. Griswold
    Andrea M. Griswold
    Assistant United States Attorney
    (212) 637-1205

Dated: July 23, 2017
       New York, New York